SMITH, J.,
delivered the opinion of the Court:
This is an application for a Writ of Error to a judgment of the Superior Court of Haw for Rockingham county.
At the last Term of the said Superior Court, the petitioner was indicted and convicted of a rape. At a subsequent day of the Term, a motion was made for a new trial, which motion was over-ruled, and the petitioner sentenced to ten years imprisonment in the Penitentiary.
It is contended for the petitioner, that he was entitled to a new trial, for the following causes:
1. Because one of the jurors held a conversation with a stranger, after retirement.
2. Because the jury were not kept together.
3. Because a juryman, to wit, (John Embry,) was committed in his opinion before the trial.
*In the Bill of Exceptions which was signed and made part of the record, all the affidavits and testimony upon which the motion for a new trial was founded, are set forth; from which it appears, that at the time of the conversation between James Gray, one of the jury, and Robert Mooney, his relation, upon which the first objection is founded, there was no separation of the jury; they were all in the same room, and the Deputy Sheriff was also present: the objection is, that in such conversation, there was, or might have been, a tampering with the jury. The evidence on the part of the petitioner only proves, that whilst the jury were all in a dining room and some of them at the windows, some conversation passed with a person in the street at the distance of five or six yards; that although the witness did not hear what passed, yet the conversation appeared to be open, without any attempt to conceal what was said. The evidence of James Gray, the juryman, and Robert Mooney, the other person alluded to, gives this explanation of the transaction; “that Gray, the juryman, being at the window and seeing Mooney his relation pass b3, requested him to let his family know that he was detained on the jury, and should not be at home that night, and desired him (Mooney) to procure his watch and give it to the Deputy Sheriff, to be handed to him, to which Mooney made no reply, but did as desired.” It may be said that Gray and Mooney are both implicated, and that their testimony goes to exculpate themselves. This is admitted, and we are all of opinion, that their testimony is to be received with great allowance: but in all particulars, they are corroborated by Archibald Rutherford, another juror, who was sitting at the window with Gray, and heard all that passed. Although Rutherford be a juror, he is entitled to full credit; because in this case he was not implicated, nor was any of the jury except Gray, accused of anj' I improper conduct during the trial. In the Case of Massey Thomas v. The Commonwealth, decided at June Term, 1825, one ground upon which the Writ of Error was applied for, was, that a juror in presence of the Sheriff, at a time when he was separated from the other members of the jury, directed a neighbour, who was passing on his horse at some distance, to inform his family of the cause of his not coming home: this was decided not to be sufficient to set aside the verdict. The present is equally as strong a Case in favour of the Commonwealth: the jury *and Deputy Sheriff were all in the room ; and although the Deputy Sheriff did not hear the conversation, yet it is proved by one of the jury who was no way implicated in the transaction, and whose evidence, therefore, is entitled to full credit. In Massey Thomas’s Case, it was decided that a bare possibility of a tampering with the jury is not sufficient to set aside a verdict; but in the present Case, if, as we suppose, the evidence of the juror, Rutherford, is entitled to full credit, it was impossible that there could have been any tampering in that particular instance. This circumstance, therefore, afforded no ground for a new trial.
2. It is contended that there was a separation of the jury, and that a new trial ought to have been awarded on that ground. The evidence relied upon to establish this fact, proves that the jury were kept up stairs in a tavern ; that they occupied five lodging rooms, that those rooms were separated by a passage, into which the only doors to said rooms opened; that the said doors were continually open except that at one time, for a few minutes, one of them was closed; that at each end of this passage, there were doors which were continually kept fastened and secured, and that one or more of the Deputy Sheriffs were continually attending on said jury, and did not know or believe that any person could have had access to them. We are all of opinion, that keeping the jury in rooms thus situated, and attended, was a strict compliance with the Law, which requires that a jury in such case should be kept together.
The third ground upon which the new trial was asked for, is that John Embry, one of the jury, was committed, in his opinion, before the trial. The affidavit of Richard Robinson is relied upon to prove the fact. He states, that half an hour before the Court set upon the trial of the petitioner, he heard the said Embry say, “that Kennedy, the prisoner, was doomed for the Penitentiary; that he would go to the Penitentiary if he ever attempted to commit a Rape.” Embry, by his affidavit, denies that he had ever seen or heard of the prisoner until the daj of the trial, and is positive that he had never expressed anj opinion, as to his guilty or innocence: but take it upon the evidence of Robinson, and it does not appear that Embry was expressing his private opinion as to the guilt of *346 the prisoner, or what judgment ought to be rendered aganst him. He had not then been summoned, and probably, did not expect *to be upon the jury, and was only expressing an opinion as to what he supposed a jury might probably do in such a case, considering the nature of the offence of which the prisoner was accused, and the aggravating circumstances under which it was said to have been perpetrated; for it appears by a certificate annexed to the record, that the prisoner was a school-master, and was charged with having committed the offence at his schoolhouse, upon a girl about 12 years of age, who was there as one of his pupils.
The Case of 'Munford Smith, who was convicted of murder in the second degree, and applied to this Court for a' Writ of Error, at the June Term, 1815, (ante, p. 6,) was a much stronger Case in favour of the prisoner than the present: and if it be correct, the objection made in this case to the juror, ought not to avail the prisoner.
Upon the whole we are of opinion, that there is no ground on which the Court would be justified in awarding a Writ of Error; the motion is therefore over-ruled.